**E-Filed 7/7/05**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| XEROX CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>FAR WESTERN GRAPHICS, INC, et al.,<br><br>                    Defendants. | Case Number C-03-4059-JF (PVT)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S REQUEST FOR IMMEDIATE PARTIAL JUDGMENT ON THAT RULING<br><br>[Doc. No. 99] |

Plaintiff Xerox Corporation ("Xerox") moves for partial summary judgment as to its sixth claim for relief against Defendant Far Western Graphics, Inc. ("FWG") for breach of a promissory note and its eighth claim for relief against Defendant David Motekaitis ("Motekaitis") for breach of a personal guaranty agreement on the note. The Court has considered the moving and responding papers as well as the oral arguments presented at the hearing on July 8, 2005. For the reasons discussed below, the Court will grant the motion.

**I. BACKGROUND**

The parties are familiar with the events leading up to this action, which need not be set forth in full here. As relevant to the instant motion, the following facts are undisputed: FWG

was a Xerox customer for several years, during which time FWG both purchased and leased copying machines from Xerox.  In November 2000, Xerox notified FWG of a delinquency on one of its accounts, Xerox Customer Number 666756507, in the amount of $294,537.11.  FWG acknowledged the debt and the parties agreed to refinance it.  Motekaitis, the president of FWG, executed a promissory note for the principal sum of $294,537.11 plus interest at a rate of 10% per annum.  Under the terms of the note, FWG was to make twenty-four consecutive monthly installment payments of $13,591.39, for total payments of $326,193.46.  Note at ¶ A.

The note contains a personal guaranty directly above Motekaitis' signature stating that "[a]s additional consideration for the refinancing of the principal balance of this Promissory Note, the undersigned personally guarantees payment of this note in accordance with its tenor." The note also contains a default provision stating that at Xerox's option the entire unpaid balance of the principal and all unpaid accrued interest will become due immediately upon the occurrence of certain events, one of which is FWG's failure to pay any installment within ten days of the due date.  Note at ¶ B.  The note provides that if Xerox institutes legal proceedings to collect on the note, FWG and Motekaitis must pay Xerox all costs and expenses of such proceedings including reasonable attorneys' fees.  Note at ¶ D.  Finally, the note provides that "[p]ayments due under this Promissory Note shall be made without claim of set-off, counterclaim or deduction of any nature or kind or for any cause whatsoever," and that "[t]he liability of each of the undersigned shall be absolute and unconditional and without regard to the liability of any other party."  Note at ¶ F.

FWG made payments through December 2001, but defaulted at some point in 2002.  In February 2003, Anita McGovern ("McGovern"), a "legal collection specialist" in Xerox's commercial law department, telephoned Serena Motekaitis ("Serena"), CEO of FWG, to discuss the problem.  They agreed that Xerox would accept payment of $120,000 in satisfaction of the debt, which at that time had a principal balance of $129,130.01.[1]  On February 11, 2003,

---

[1] In its papers, FWG indicates that it does not necessarily agree that this was the amount of the principal.  However, as noted herein, Serena signed and returned a subsequent letter dated February 11, 2003 setting forth $129,130.01 as the amount due on the account.  Based upon this

2

1   McGovern sent Serena a letter by facsimile ("February 11 Letter") setting forth the terms of this

2   agreement, which included a requirement that FWG make twenty-four consecutive monthly

3   payments of $5,000 each, totaling $120,000.  Serena signed the letter and returned it.  FWG

4   made five monthly payments of $5,000 but then defaulted.

5        The instant motion turns upon resolution of the parties' competing characterizations of

6   the February 11 Letter.  Xerox asserts that the letter was an attempt at accord and satisfaction of

7   the debt on the note, and that when FWG defaulted on the payment plan the entire balance on the

8   note became due and owing immediately.  Xerox requests partial summary judgment in the

9   amount of the remaining principal balance on the note plus interest and attorneys' fees according

10  to proof.  Xerox further asserts that under the plain language of the note FWG cannot assert

11  setoff as a defense to an action on the note, and that Motekaitis is personally liable as a guarantor

12  of the note.

13       FWG asserts that the February 11 Letter was a novation that extinguished its obligations

14  under the note, and that as a result the total principal balance owing to Xerox is at most $95,000,

15  representing a new loan amount of $120,000 less the $25,000 in payments made.  FWG further

16  asserts that the February 11 Letter does not contain a bar to the assertion of a setoff defense and

17  does not contain a personal guaranty by Motekaitis.  Absent such personal guaranty, Motekaitis

18  asserts that he cannot be held personally liable for monies due.

19                                    **II. LEGAL STANDARD**

20       A motion for summary judgment should be granted if there is no genuine issue of

21  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

22  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

23  the initial burden of informing the Court of the basis for the motion and identifying the portions

24  of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

25  demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

26  _____

27  admission by Serena in her capacity as CEO of FWG, and in the absence of any specific evidence
    that the amount was less than $129,130.01, the Court concludes that any reasonable trier of fact
28  would find the principal amount due on the note to be $129,130.01 as of February 11, 2003.

                                               3

1   317, 323 (1986).

2          If the moving party meets this initial burden, the burden shifts to the non-moving party to

3   present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

4   *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

5   evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

6   party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

7   *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

8                                    **III. DISCUSSION**

9          It is undisputed that FWG executed the note upon which Xerox is suing, that Motekaitis

10   personally guaranteed the note and that the note precludes FWG from raising setoff as a defense.

11   The only question is whether Defendants have raised a triable issue of material fact as to whether

12   the February 11 Letter constituted a novation that extinguished the note and its terms rather than

13   an attempt at accord and satisfaction.

14          "An accord is an agreement to accept, in extinction of an obligation, something different

15   from or less than that to which the person agreeing to accept is entitled."  Cal. Civ. Code § 1521.

16   However, "[t]hough the parties to an accord are bound to execute it, yet it does not extinguish the

17   obligation until it is fully executed."  Cal. Civ. Code § 1522.  "Acceptance, by the creditor, of the

18   consideration of an accord extinguishes the obligation, and is called satisfaction."  Cal. Civ. Code

19   § 1523.  These statutes establish that "accord alone, by which is meant a mere agreement to

20   accept something in extinction of an existing obligation, is insufficient as a defense to an action

21   on the original obligation, and that such original obligation is not actually extinguished until

22   there has been an acceptance of the consideration agreed upon, or, in other words, satisfaction."

23   *Silvers v. Grossman*, 183 Cal. 696, 699 (1920).

24          Novation, on the other hand, "is the substitution of a new obligation for an existing one."

25   Cal. Civ. Code § 1530.  In other words, "a novation extinguishes one obligation by accepting for

26   it another."  *Gardiner v. Gaither*, 162 Cal.App.2d 607, 620 (1958).  This is *not* true of an accord.

27   *Id.*  With respect to an accord, "it is not the new *promise* that is accepted in lieu of the existing

28   claim, but the *performance* of that new promise."  *Id.* (emphasis added).

                                              4

1    Applying these standards, the Court concludes as a matter of law that the February 11

2    Letter was an attempt at accord and satisfaction of the debt on the note and did not constitute a

3    novation.  Above the salutation, the letter indicates that it is "Re:  Xerox Customer Number (s)

4    666756507" and "Re:  Balance $129,130.01."  The letter then reads in its entirety as follows:

5         Dear Ms. Motekaitis:

6         This letter is to confirm the payment plan that we discussed on the telephone.
          You agree to pay the total sum of $120,000.00, payable to Xerox Corporation in
7         24 monthly installments of $5,000.00 each.  The first payment is due March 28th,
          2003 and the remaining payments are due on the 28th of each successive month
8         until the total sum is paid.

9         All payments will be payable to Xerox Corporation and mailed to:  Xerox Capital
          Services, LLC, Attn:  Barbara E. Kirby, Post Office Box 660506, Dallas, Texas,
10        75266-9937.

11        Completion of the payments according to the above plan will constitute full and
          final satisfaction of the referenced Xerox account.  If the payment plan is not
12        completed as per our agreement, the total unpaid balance of the account will
          become immediately due and payable without notice or demand.
13
          If it should become necessary for Xerox Corporation to institute legal proceedings
14        to collect any amount due, the undersigned agrees to pay, in addition to the unpaid
          balance, all costs and expenses of such proceedings including reasonable
15        attorneys' fees.

16        Please sign in the space designated below, and return this letter to me, to evidence
          acceptance of the above terms.
17

18    Applying California contract law, the Court must interpret this letter agreement so as to

19    give effect to the parties' mutual intention.  *Ben-Zvi v. Edmar Co.*, 40 Cal.App.4th 468, 473

20    (1995); *Floystrup v. City of Berkeley Rent Stabilization Board*, 219 Cal.App.3d 1309, 1317

21    (1990).  If possible, the Court will determine the parties' intention solely from the language of

22    the letter agreement itself.  *Ben-Zvi*, 40 Cal.App.4th at 473; *Floystrup*, 219 Cal.App.3d at 1318.

23    The Court will not "create for the parties a contract which they did not make," nor will it "insert

24    in the contract language which one of the parties now wishes were there."  *Ben-Zvi*, 40

25    Cal.App.4th at 473 (internal quotation marks and citation omitted).  The Court will, however,

26    allow extrinsic evidence tending to prove a meaning to which the agreement's language

27    reasonably is susceptible.  *Oakland-Alameda County Coliseum v. Oakland Raiders, Ltd.*, 197

28    Cal.App.3d 1049, 1057-58 (1988).  In determining whether to allow extrinsic evidence, the test is

5

1 not whether the contract appears to be plain and unambiguous on its face, but whether the offered

2 evidence is relevant to prove an interpretation that is reasonable in light of all the facts,

3 circumstances and conditions surrounding execution of the agreement. *Floystrup*, 219

4 Cal.App.3d at 1318; *Oakland Raiders*, 19 Cal.App.3d at 1057-58.

5       The language of the February 11 Letter is unambiguous.  It states that it is a "payment

6 plan" with respect to account number 666756507, which carried a balance in the amount of

7 $129,130.01.  The letter offers to accept a lesser amount, $120,000, in "full and final satisfaction

8 of the referenced Xerox account" *if* FWG complies with the specified payment plan of $5,000 per

9 month for twenty-four consecutive months.  The letter explicitly provides that "[i]f the payment

10 plan is not completed as per our agreement, the total unpaid balance of the account will become

11 immediately due and payable without notice or demand."  This language cannot reasonably be

12 construed as a novation extinguishing the obligation on the underlying note, because it expressly

13 contemplates the original obligation on the note becoming due in the event FWG fails to make

14 the agreed-upon monthly payments of $5,000.  The *only* reasonable construction of the letter is

15 that it is an attempt at accord and satisfaction.

16       At the hearing, counsel for FWG argued that the third paragraph of the letter, which

17 contains the language relied upon by Xerox, is simply an acceleration clause and that the

18 language providing that "the total unpaid balance on the account" would become due

19 immediately is a reference to the *new* balance of $120,000 rather than the balance on the original

20 obligation.  However, the first sentence of the paragraph states that completion of the payment

21 plan will be deemed satisfaction "*of the referenced Xerox account.*"  The "referenced" Xerox

22 account is explicitly identified in the heading of the letter as being account number 666756507

23 carrying a balance of $129,130.01.  Accordingly, it is clear that "the total unpaid balance on the

24 account" refers to the original account obligation of $129,130.01 rather than some new account

25 obligation.

26       Serena offers her declaration statement that she and McGovern "agreed that the new

27 agreement would take the place of and would supercede [sic] the original note."  McGovern

28 Decl. ¶ 9.  As stated above, the Court may consider extrinsic evidence that is relevant to prove an

6

1    interpretation *that is reasonable* in light of all the facts, circumstances and conditions

2    surrounding execution of the agreement.  The interpretation offered by FWG is not reasonable in

3    light of the circumstances of this case.  The February 11 Letter contains no indication that it is

4    intended to extinguish the underlying note and, as noted, contains language contrary to any such

5    interpretation.  Furthermore, the letter contains no mention of the personal guaranty of Motekaitis

6    and no explanation as to why Xerox would give up such a personal guaranty on a delinquent

7    account.

8            The only aspect of the matter that gives the Court slight pause is the one-page document

9    that accompanied the February 11 Letter when it was sent to Serena.  That untitled document

10   contains a number of subheadings such as "Loan Data," "Periodic Payment," "Calculations" and

11   "Table Data."  Under "Loan Data," the following information appears:

12            Loan amount:  $120,000.00
             Annual interest rate:  0.00%
13            Term in years:  2
             Payments per year:  12
14            First payment due:  3/28/2003

15   The document also contains a table of payments on a $120,000 loan, with columns for payment

16   date (always on the 28th of the month), beginning balance ($120,000.00), interest (0.00),

17   principal paid ($5,000.00), ending balance and cumulative interest (0.00).  Taken out of context,

18   the document might constitute evidence sufficient to create an ambiguity as to whether the parties

19   entered into a new loan for $120,000 that extinguished the original loan.  However, when viewed

20   in conjunction with the February 11 Letter and against the backdrop of the parties' dealings on

21   the note, the Court concludes as a matter of law that no such ambiguity exists.  The language of

22   the February 11 Letter so clearly indicates an attempt at accord and satisfaction that the *only*

23   reasonable explanation for the accompanying document is that it was included for purposes of

24   setting forth an unambiguous schedule of payments under the payment plan.

25            Accordingly, the Court will grant Xerox's motion for summary judgment as to claims six

26

27

28

                                                      7

and eight in the amount of $104,130.10[2] plus interest and attorneys' fees according to proof. Xerox requests that this ruling be reduced to judgment immediately.  The Court construes Xerox's request as a motion for partial judgment under Federal Rule of Civil Procedure 54(b). That rule permits a court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). "Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). Xerox has not demonstrated a pressing need for an early and separate judgment.  Several claims remain to be adjudicated between Xerox and FWG.  While the eighth claim appears to be the only claim to which Motekaitis is a party, a claim against him as personal guarantor would arise only in the event that FWG failed to satisfy the obligation.  The Court therefore will deny Xerox's motion for partial judgment under Rule 54(b).

## IV. ORDER

Xerox's motion for partial summary judgment is GRANTED as set forth herein.

Xerox's request for partial judgment pursuant to Rule 54(b) is DENIED.

DATED:  7/8/05

/s/ electronic signature authorized
_____
JEREMY FOGEL
United States District Judge

---

[2] In its moving papers, Xerox states that the principal balance on the note is $104,130.10; in its reply papers, Xerox states that the principal balance on the note is $107,950.84.  The February 11 Letter, which was signed by both parties, states that remaining principal balance as $129,130.01.  Subtracting the $25,000 in payments that were made subsequently, the remaining balance is $104,130.10.

8

1   This Order was served on the following persons:

2

3   Kathryn S. Diemer     kdiemer@diemerwhitman.com

4   Ross A. Spector     ross.spector@worldnet.att.net

5   Ross A. Spector     ross.spector@worldnet.att.net

6   Judith L. Whitman     jwhitman@diemerwhitman.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9